UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Vital Images, Inc.,                                                 Civil No. 07-4195 (DWF/AJB)

              Plaintiff,

v.                                                                 **MEMORANDUM**
                                                                      **OPINION AND ORDER**
Peter Martel, James Burchfield,
Mercury Computer Systems, Inc.,
and Visage Imaging, Inc.,

              Defendants.
_____

Joseph M. Sokolowski, Esq., Karen G. Schanfield, Esq., and Ellen C. Meyer, Esq., Fredrikson & Byron, PA, counsel for Plaintiff.

Richard T. Ostlund, Esq., Steven M. Pincus, Esq., and Courtland C Merrill, Esq., Anthony Ostlund & Baer, PA, counsel for Defendants.
_____

**INTRODUCTION**

This matter is before the Court pursuant to a motion for a temporary restraining order brought by Plaintiff Vital Images, Inc. ("Vital Images"). In its Verified Complaint (the "Complaint"), Vital Images sets forth nine counts: (1) Breach of Non-Compete Agreement (against Defendants Peter Martel and James Burchfield); (2) Breach of Confidentiality Agreements (against Martel and Burchfield); (3) Breach of Duty of Loyalty (against Martel and Burchfield); (4) Civil Conspiracy (against all Defendants); (5) Misappropriation of Confidential Information (against all Defendants); (6) Violation of Minnesota Uniform Trade Secret Act (against all Defendants); (7) Tortious

Interference with Prospective Business Relations (against all Defendants); (8) Tortious Interference with Contract (against Defendants Mercury Computer Systems, Inc. ("Mercury Computer") and Visage Imaging, Inc. ("Visage Imaging")); (9) Unfair Competition (against Burchfield, Mercury Computer, and Visage Imaging). For the reasons stated below, Vital Images' motion is granted in part and denied in part.

## BACKGROUND

Vital Images is a Minnesota corporation that develops medical imaging technologies and analysis software used primarily in the fields of radiology and cardiology. Two of Vital Images' software products are Vitrea and VitalConnect. Vitrea software works as a "visualization" tool that allows multi-dimensional (3D and 4D) viewing of medical images. VitalConnect software operates as a web-based access tool, allowing users to access medical images anywhere in real-time via the Internet. When used together, Vitrea and VitalConnect software allow a user to access 3D and 4D medical images anywhere via the Internet.

On or around March 5, 1999, and August 18, 2003, respectively, Martel and Burchfield were offered employment as Regional Sales Managers at Vital Images. (Compl. at ¶ 9; Affidavit of Michael H. Carrel ("Carrel Aff.") at ¶¶ 5, 6, Exs. 1, 2.) Both Martel and Burchfield signed a "Confidentiality, Assignment and Non-Competition Agreement" ("Agreement(s)") with Vital Images. (Carrel Aff. at ¶¶ 7, 8, Exs. 3, 4.) Relevant to this action, the Agreements contain the following identical language:

    A.    <u>CONFIDENTIALITY</u>

. . . .
        2.    <u>Obligation of Confidentiality</u>.

. . . .

        (b)    <u>Restrictions on Use and Disclosure</u>.  Employee will not disclose to others, use for Employee's own benefit or for the benefit of anyone other than Company, or otherwise appropriate or copy, any Confidential Information, whether or not developed by Employee, except as required in the lawful performance of Employee's obligations to Company hereunder.
        . . . .

    D.    <u>RESTRICTIONS ON COMPETITION</u>

. . . .

        9.    <u>Restriction on Competition</u>.  Employee agrees that for a period of eighteen (18) months from the date of Employee's termination of employment with the Company, irrespective of the reasons for termination, Employee shall not, directly or indirectly (1) develop, market, or distribute any products directly competitive with the Company's products, or (2) provide services as an employee, consultant, or otherwise for any person or entity that is developing or marketing products that compete with the Company's products.  For purpose of this section only, Company products shall mean only those Company products with which Employee was actively involved while employed by Company.

(*Id.*)

As Regional Sales Managers, Martel and Burchfield identified, developed, managed, and closed direct sales opportunities in their territories, and delivered on quarterly quotas.  (Carrel Aff. at ¶ 16 & Ex. 5.)  Martel and Burchfield were trained on Vital Images' products and products being developed.

3

Mercury Computer is a provider of computing systems and software for data-intensive applications, including image processing, signal processing, and visualization. Visage Imaging is a wholly owned subsidiary of Mercury Computer related to life sciences and medical businesses.[1] During the summer of 2007, Mercury Computer and Visage Imaging interviewed potential candidates for sales positions through an executive recruiting firm. Eventually, both Martel and Burchfield were hired as Senior Account Managers at Visage Imaging. Martel and Burchfield notified Vital Images that they had accepted offers of employment from Visage Imaging on or about September 4, 2007, and September 10, 2007, respectively. Martel continued to work for Vital Images until September 12, 2007, and he began working with Visage Imaging on or around September 17, 2007. Burchfield continued to work for Vital Images until September 28, 2007, and he began working for Visage Imaging on or around October 1, 2007.

Defendants assert that both Martel and Burchfield were hired to sell Visage Imaging's PACS (picture archiving and communications systems) system. The PACS system stores, archives, retrieves, and distributes medical images. (Declaration of Colin Murphy ("Murphy Decl.") at ¶ 8.)[2] The PACS system also enables users at various physical locations to access the same information at the same time. However, when a

---

[1]   Visage Imaging was formed as a subsidiary on August 13, 2007.

[2]   The PACS system essentially represents the evolution of traditional x-rays, x-ray archives, and other hard-copy based means of managing medical images.

4

PACS system is standing alone, PACS users can access medical images only from computers connected to the PACS system. (Supp. Aff. of Michael H. Carrel ("Supp. Carrel Aff.") at ¶ 5.)

In separate letters to Martel and Burchfield, each dated September 18, 2007, counsel for Vital Images reminded Martel and Burchfield of their obligations under their respective Agreements and sought immediate assurances with respect to those obligations. Counsel for Vital Images sent a similar letter to Colin Murphy, Visage Imaging's Vice President of Sales and Marketing, requesting that Visage Imaging warrant that it will take appropriate measures to assure that former employees of Vital Images refrain from contacting Vital Images' customers or prospects for 18 months and comply with their obligations under the Agreements. None of the Defendants responded substantively to the letters. On October 9, 2007, Vital Images filed its Complaint and moved for a temporary restraining order.

## DISCUSSION

### I. Standard of Review

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether

they tilt toward or away from granting injunctive relief. *See West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## II. Likelihood of Success on the Merits

### A. Breach of Non-Compete Agreement

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of its claim. *See Dataphase*, 640 F.2d at 114.

#### 1. Enforceability

Minnesota law governs Burchfield's Agreement. Non-compete agreements, though disfavored by Minnesota courts, are enforceable if they serve a legitimate employer interest and are no broader than necessary to protect that interest. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998); *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 899 (Minn. 1965). Vital Images argues that the non-compete provision protects its business, goodwill, client relationships, and confidential information. Visage Images does not dispute, and the Court finds, that the non-compete serves Vital Images' legitimate interests.

The Court turns to whether the non-compete provision is broader than necessary to protect Vital Images' interests. In determining whether a restrictive covenant is reasonable, Minnesota courts have looked to see whether the covenant was bound by temporal or territorial limitations. *See Bennett*, 134 N.W.2d at 899. Moreover, under

Minnesota law, the "blue pencil doctrine" allows a court, at its discretion, to modify an unreasonable non-compete and enforce it only to the extent reasonable. *See Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 n.8 (Minn. 2002) (citing *Davies & Davies Agency, Inc. v. Davies,* 298 N.W.2d 127, 131 n.1 (Minn. 1980)).

The non-compete provision restricts Burchfield's activities "for a period of eighteen (18) months from the date of" his termination. Visage Imaging does not argue that the temporal scope of the non-compete provision is unreasonable. Indeed, Minnesota courts have upheld non-compete provisions with similar time provisions. *See Timm & Assocs., Inc. v. Broad*, Civil No. 05-2370, 2006 WL 3759753, at *4 (D. Minn. Dec. 21, 2006) (finding two-year restriction reasonable); *Alside, Inc. v. Larson*, 220 N.W.2d 274, 280 (Minn. 1974). The Court concludes that 18 months is a reasonable time restriction here.

Visage Imaging does argue, however, that the non-compete provision is unenforceable for lack of a geographic limitation.[3] While it is true that the non-compete does not contain a geographic limitation, Vital Images argues that this fact does not make the non-compete provision per se unreasonable. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. Ct. App. 1993). Here, the non-compete provision provides that

---

[3] Defendants also argue that the non-complete provision is unenforceable because Martel and Burchfield were misled into signing what was called a "non-disclosure" agreement. The Court finds this argument unavailing. It is undisputed that both Burchfield and Martel executed a "Confidentiality, Assignment and Non-Competition Agreement" with Vital Images prior to commencing employment. There is no evidence that Vital Images misled Burchfield and Martel.

Burchfield "shall not, directly or indirectly (1) develop, market, or distribute any products directly competitive with the Company's products, or (2) provide services as an employee, consultant, or otherwise for any person or entity that is developing or marketing products that compete with the Company's products." (Carrel Aff. at ¶¶ 7, 8, Exs. 3, 4.) The non-compete provision further provides that "[f]or purpose of this section only, Company products shall mean only those Company products with which Employee was actively involved while employed by Company." (*Id*.) Thus, the non-compete is restricted by product, not geography.

The Court is not convinced that the scope of the non-compete is reasonable absent a geographical limitation. Defendants contend that Burchfield's territory while working for Vital Images included western New York, western Pennsylvania, western Maryland, and West Virginia. The Court concludes that it is reasonable, at this early stage in the litigation, to modify the scope of the non-compete provision so that it is limited geographically to those states in which Burchfield operated while at Vital Images.[4] Under Minnesota law, the non-compete provision is enforceable as modified.

The Agreement with Martel contains a non-compete provision identical to Burchfield's, but is governed by Iowa law. Under Iowa law, a reasonable non-compete

---

[4] It is difficult to address the proper scope of an injunction due to a lack of evidence regarding any overlap of customers between Vital Images and Visage Imaging and evidence of customers operating in multiple territories. Nonetheless, the Court is convinced that the modified non-compete provision is appropriately narrow in geographic scope. The Court recognizes that the scope of the injunction might warrant expansion after discovery.

clause protecting an employer's legitimate interests is enforceable.  *See Am. Express Fin. Advisors, Inc.  v. Yantis*, 358 F. Supp. 2d 818, 829-30, 836 (N.D. Iowa 2005).  A three-prong test is used to determine the enforceability of such a clause.  *See Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1431 (N.D. Iowa 1996).  The court determines whether the restriction is reasonably necessary for the protection of the employer's business; unreasonably restrictive of the employee's rights; and prejudicial to the public interest.  *See id.*; *Pro Edge v. Gue*, 374 F. Supp. 2d 711, 739 (N.D. Iowa 2005).  Moreover, under Iowa law, courts may make necessary modifications to a non-compete to make it reasonable and enforceable.  *See Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1262 (N.D. Iowa 1995).

For the reasons discussed above, the Court concludes that the non-compete provision in Martel's Agreement, with the same geographical limitation as discussed above, is reasonably necessary for the protection of Vital Images' business and is not unreasonably restrictive of Martel's rights.  Defendants assert that Martel's territory at Vital Images included eastern Massachusetts, Rhode Island, eastern Connecticut, New Hampshire, and Maine.  Further, Vital Images has introduced evidence that Martel managed Vital Images' relationship with a customer in Burlington, Vermont.  Thus, the provisions of the non-compete operate in all of the above states.  Further, because the restrictions only apply for 18 months, the Court finds that enforcement of the non-compete is not injurious to the public interest.

### 2.     Breach of Non-Compete

Vital Images asserts that Burchfield and Martel have both breached the non-compete provisions of the Agreements.  Vital Images points to certain contacts made by Burchfield and Martel with clients of Vital Images.  Defendants, on the other hand, argue that neither Burchfield nor Martel have breached the terms of the non-compete provision because they do not sell any product at Visage Imaging that directly competes with Vital Images' Vitrea product.

Defendants acknowledge that Burchfield and Martel sold the Vitrea3D workstation while at Vital Images.  However, Vital Images has submitted evidence that Burchfield and Martel also sold both the PACS-integrated Vitrea and VitalConnect software while employed with Vital Images.  (Carrel Aff. at ¶ 37, Ex. 11; Supp. Carrel Aff. at ¶¶ 10, 11.)  Vital Images' Vitrea software integrates with PACS and works as a "visualization" tool creating multi-dimensional images of medical images.  Vital Images' VitalConnect software also integrates with PACS and operates as a web-based access tool, allowing users to access medical images anywhere via the Internet.

Evidence in the record demonstrates that Visage Imaging also sells visualization software called Visage CS.  On its website, Visage Imaging explains that its Visage CS software "is blazingly fast and easy-to-use software for 3D-based image interpretation, post-processing, and image distribution . . . [and] allows virtually 'instant' access to all data anytime, anywhere inside or outside the hospital or imaging center walls . . . ." (Supp. Carrel Aff. at ¶ 14, Ex. C.)  It further explains that Visage CS can be used as a

standalone workstation, integrated into a customer's existing PACS system, or obtained as a completely integrated solution consisting of Visage PACS and Visage CS. (*Id.*) Based on the parties' respective descriptions of their software products, the Court concludes that Vital Images is likely to succeed in demonstrating that Visage Imaging's Visage CS directly competes with Vital Images' Vitrea and VitalConnect software products. That the products directly compete is underscored by the statements of Colin Murphy, Vice President of Sales and Marketing for Visage Imaging. At the European Congress of Radiology conference, Michael H. Carrel, the Chief Operating Officer and Chief Financial Officer for Vital Images, along with a Vital Images Senior Manager, visited Mercury Computer's product display booth. Murphy was restricted from viewing certain demonstrations on products because, as they were told, they directly competed with Vital Images' products.

Defendants maintain, however, that Burchfield and Martel do not sell Visage CS or other PACS-integrated software that directly competes with Vital Images' software products. Evidence introduced by Vital Images, however, belies this assertion. In particular, in an e-mail to Dr. Steven Braff of Fletcher Allen Health Care, a Vital Images' customer with whom Martel dealt while employed with Vital Images, Martel states in part:

> The demands for a simple yet elegant thin client 2D/3D tool that is
> imbedded into a 2D PACS environment has become very important to the
> industry as expressed to me by numerous leading physicians, IT personnel
> and administrators during my last ten years selling 3D. . . .

11

>It is for this reason that I have departed Vital Images and embarked on what many have expressed to me to be the first truly integrated solution as a turn key 2D/3D PACS or simply a plug in play into existing PACS systems on the market today.

(Supp. Carrel Aff. at ¶ 17, Ex. D.)  This e-mail demonstrates that Martel is attempting to market Visage Imaging's visualization software.

In addition, Vital Images has submitted evidence that on August 29, 2006, Martel sent an e-mail to Burchfield and copied Tim North at Mercury Computer regarding "Discussion Almusa and Blodgett UPMC."  (Carrel Aff. at ¶ 39 & Ex. 12.)  The University of Pittsburgh Medical Center ("UMPC") is a teaching hospital and a client of Vital Images for who Burchfield was responsible.  (*Id*. at ¶ 39(b).)  Vital Images asserts that "Almusa and Blodgett" are radiologists at UPMC.  The e-mail reads:

>Jim and Tim,
>
>Tim, Jim and I have signed the offer letter and our [sic] starting to work as soon as possible pending Colin's direction.  In the meantime we are pursuing a prospective customer now.  In preparation for the conference call this afternoon at 1PM are [sic] it possible to have our own conference call at 11AM today.  If so please call me [sic] Jim and I will conference up Tim.  Let me know.

(*Id*. at ¶ 39, Ex. 12.)   Burchfield responded:

>Preliminary call to go over expected solution configuration.
>1) Introductions
>2) Drs. Almusa & Blodgett describe the situation and desired workflow.
>3) Open discussion of the technology and configurations.
>4) Open discussion of possible acquisition options.
>5) Identify action items and next steps.
>
>Thanks for taking the time to get together on this call.  I am sure that the time will be well spent and benficial [sic] for all.  Pete and I are confident

> we have a solid solution, but it is important that we determine the best
> solution for your requirements and your workflow.

(*Id.* at ¶ 40, Ex. 13.)

Based on the record before it, the Court finds that Vital Images is likely to succeed in demonstrating that Martel and Burchfield marketed products that directly compete with products that they were actively involved with while employed with Vital Images. Accordingly, the Court finds that Vital Images has demonstrated a likelihood of success on the merits on its Breach of Non-Compete Agreement claim against Burchfield and Martel.

### B. Remaining Causes of Action

Vital Images asserts several additional causes of action. These include Breach of Confidentiality Agreements, Breach of Duty of Loyalty, Civil Conspiracy, Misappropriation of Confidential Information, Violation of Minnesota Uniform Trade Secret Act, Tortious Interference with Prospective Business Relations, Tortious Interference with Contract, and Unfair Competition. The factual record with respect to these claims is undeveloped and does not allow for a meaningful analysis of Vital Images' likelihood of success on these claims. Accordingly, the Court concludes that Vital Images has failed to establish a likelihood of success and denies Vital Images' motion as it pertains to these remaining claims.

### III. Irreparable Harm

The second factor that the movant must establish is that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by

money damages.  *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  A showing of speculative harm is insufficient to meet this burden.  *Id.*  Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief.  *Gelco Corp.*, 811 F.2d at 420.  Vital Images asserts that it would face irreparable harm because Martel and Burchfield have taken Vital Image's "hard-won" customer goodwill and confidential information and used it to the advantage of a direct competitor.  Defendants, on the other hand, assert that Vital Images has not met its burden to show irreparable harm.

Irreparable harm may be inferred from the breach of a valid restrictive covenant.  *See Alside*, 220 N.W.2d at 278; *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085, 1090-91 (D. Minn. 1981).  Given the nature of Vital Images' protectable business interests, if no restraint were imposed, Vital Images would likely lose valuable business relationships in the territories in which Burchfield and Martel once worked while at Vital Images.  This harm will be irreparable because no legal remedy can mend damaged or destroyed business relationships.  Thus, the Court finds that Vital Images has established it will suffer irreparable harm in the absence of a temporary restraining order.

## IV.   Balance of Harms

The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant.  *See Dataphase*, 640 F.2d at 114.  Vital Images argues that this factor favors the issuance of a temporary restraining order because any

harm Defendants might suffer is slight compared to the harm that Vital Images will incur if injunctive relief is not granted. Defendants argue that injunctive relief would significantly harm Burchfield and Martel in their right to earn a living and that the balance of harms weighs against a restraining order.

As discussed above, the Court has already concluded that Vital Images will suffer irreparable harm in the absence of injunctive relief. Without denying that the issuance of a temporary restraining order will negatively impact Burchfield and Martel, the Court finds that the effect on Defendants is outweighed by the harm Vital Images would suffer without an injunction. Accordingly, this factor weighs in favor of Vital Images.

## V.     Public Interest

The final *Dataphase* factor to be considered by a court is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. The Court finds that the public interest is best served by enforcing the valid non-compete provisions in the Agreements and by protecting the legitimate business interests of Vital Images.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that:

1.     Plaintiff Vital Images' Motion for a Temporary Restraining Order (Doc. No. 3) is **GRANTED IN PART** and **DENIED IN PART** as follows:

        a.      Until further notice from the Court, Burchfield, and any person or entity in active participation or concert with him, is prohibited for a period of eighteen (18) months from the date of his termination, from directly or indirectly developing, marketing, or distributing, in the same sales territories in which he operated while employed at Vital Images, any products that are directly competitive with Vital Images' products with which Burchfield was actively involved while employed by Vital Images.

        b.      Until further notice from the Court, Martel, and any person or entity in active participation or concert with him, is prohibited for a period of eighteen (18) months from the date of his termination, from directly or indirectly developing, marketing, or distributing, in the same sales territories in which he operated while employed at Vital Images, any products that are directly competitive with Vital Images' products with which Martel was actively involved while employed by Vital Images.

        c.      Vital Images shall post a bond of $10,000 or cash within four (4) days of this Order.

Dated: October 19, 2007              s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          Judge of United States District Court